Filed 4/29/25  In re H.J. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re H.J. et al., Persons Coming Under the Juvenile Court Law. | B337665 c/w B338805<br><br>(Los Angeles County Super. Ct. No. 23CCJP00772A–D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>A.J.,<br><br>        Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Cathy J. Ostiller, Judge.  Dismissed as to B337665; vacated in part and remanded as to B338805.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

—————————————————

A.J. (mother) challenges a juvenile court finding that the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) does not apply in the dependency matters concerning her four children: H.J., K.W., D.W., and R.W.  Mother believes her grandmother belongs to the Yaqui Tribe.  Although the tribe responded to notices and indicated that the children are neither members nor eligible for membership in the tribe, mother contends substantial evidence did not support the juvenile court finding because DCFS failed to interview available maternal relatives when it was gathering information about the mother's Indian ancestry.

Mother's oldest child, H.J., was placed in the custody of his father and, while the appeal was pending, the juvenile court terminated dependency jurisdiction in his matter.  We dismiss mother's appeal in H.J.'s case as moot.  As to the appeal regarding mother's three younger children, we conclude there is insufficient evidence to support the juvenile court's ICWA finding.  We vacate the finding and remand for further proceedings.

## THE APPEAL AS TO H.J. (B337665) IS MOOT

In March 2023, DCFS filed a petition alleging H.J., K.W., and D.W. were persons described by Welfare and Institutions Code section 300, subdivisions (a) and (b), based on ongoing domestic violence between mother and Robert W., the father of

2

K.W. and D.W., and due to Robert W.'s substance abuse.[1]  At the jurisdiction hearing, the juvenile court sustained an amended petition as to H.J.  At the subsequent disposition hearing, the juvenile court removed H.J. from mother and released him to his father, T.W.  In October 2024, while this appeal was pending, the juvenile court terminated dependency jurisdiction.[2]

DCFS contends the appeal as to H.J. is now moot and should be dismissed.  We agree.

In *In re D.P.* (2023) 14 Cal.5th 266 (*D.P.*), the California Supreme Court explained that the critical factor in deciding whether a dependency appeal is moot is whether an appellate court can grant effective relief if it finds reversible error—that is, whether reversal can have a practical, tangible impact on the parties' legal status.  (*Id.* at pp. 276–277.)  Here, our decision on mother's challenge to the juvenile court's ICWA finding can have no practical, tangible effect on any party's legal status.

Beyond the first contact with a child, ICWA imposes obligations on a child welfare agency and the juvenile court only when a child is placed in temporary custody and when the court is presiding "over any juvenile proceeding that could result in placement of an Indian child with someone other than a parent . . . ."  (§ 224.2, subd. (c).)  H.J. is placed with a parent.  Dependency jurisdiction is terminated.  Even if we reversed the

---

[1]     All undesignated statutory references are to the Welfare and Institutions Code.

[2]     We previously granted DCFS's request that we take judicial notice of juvenile court orders from September and October 2024 terminating dependency jurisdiction over H.J. and staying the order pending receipt of a juvenile custody order, the order lifting the stay, and the final juvenile custody order.

juvenile court's finding that ICWA did not apply to H.J., it would have no effect on any relevant party. Mother asserts the appeal is not moot because there could be another dependency case in the future concerning H.J. and whether he is an Indian child would again be relevant. This possibility is entirely speculative and insufficient to avoid mootness. (*D.P.*, *supra*, 14 Cal.5th at p. 278.) As to H.J. and ICWA, there is no ongoing harm and no actual controversy to be decided.

Mother's appeal as to H.J. is dismissed.

**APPEAL AS TO K.W., D.W., AND R.W. (B338805)**

## I. Relevant Background

During DCFS's initial contacts with mother and the maternal grandmother in February 2023, both reported that the maternal family has Native American ancestry with the Yaqui Tribe. The social worker "requested . . . any information that is available from mother and [maternal grandmother]." At the March 2023 initial hearing, mother submitted a parental notification of Indian status form indicating she is or may be a member of, or eligible for membership in, the Yaqui Tribe. On the form, mother provided the maternal great-grandmother's name and telephone number.[3] The juvenile court ordered DCFS

_____

[3] Robert W. also indicated he is or may be eligible for membership in several federally recognized Indian tribes. DCFS made inquiries regarding the potential Indian ancestry of K.W., D.W., and R.W. (collectively, the children) through their paternal family and sent ICWA notices to the tribes identified. On appeal, mother does not argue DCFS or the juvenile court failed to comply with their obligations under ICWA with respect to the children's paternal lineage. We therefore do not discuss in detail the evidence or proceedings related to the investigation of Robert W.'s Indian ancestry.

4

to contact mother's family members to investigate Indian heritage. The court also ordered DCFS to contact the relevant Indian tribes and the Bureau of Indian Affairs (BIA) to determine whether ICWA applied to the case.

In the jurisdiction and disposition report, DCFS indicated ICWA might apply. On April 3, 2023, the investigating social worker interviewed mother about Indian ancestry. Mother again reported that she believed her maternal grandmother—the maternal great-grandmother—belongs to the Yaqui Tribe. Mother was not registered with the tribe. The social worker attempted to contact the maternal great-grandmother at the telephone number mother had provided. The voicemail did not allow her to leave a message.

Although the investigating social worker spoke with maternal grandmother on April 4, 2023, the report indicated maternal grandmother was upset that DCFS was considering removing the children from mother's care. Although the social worker tried to explain that DCFS was not seeking to remove the children, maternal grandmother "would not listen." The social worker was "unable to interview [her] regarding the allegations." The report did not indicate whether the social worker also attempted to ask further questions about the family's Indian ancestry.

Although the detention and jurisdiction and disposition reports mentioned that mother had extended family living in Arizona, including the children's maternal aunt and great-uncle, the record does not indicate that DCFS attempted to interview those relatives about the family's Indian ancestry. DCFS was also in contact with at least one maternal great-aunt in Los

Angeles, but there is no report that DCFS attempted to interview her about the family's Indian ancestry.

On April 6, 2023, the social worker mailed ICWA notices to the Pascua Yaqui Tribe of Arizona, using judicial council form ICWA-030. With respect to the maternal family, the ICWA notices provided mother's name, current and former addresses, and birth date; the maternal grandmother's name; the maternal grandfather's name; and the maternal great-grandmother's name and date of birth. The notices listed as "unknown" mother's birthplace, maternal grandmother's current and former addresses, maternal grandmother's date of birth, maternal grandmother's birthplace, maternal grandfather's date of birth, maternal grandfather's current and former addresses, maternal grandfather's birthplace, maternal great-grandmother's current and former addresses, maternal great-grandmother's birthplace, and all information about the maternal great-grandfather. For each relative, the form included a space for DCFS to identify "tribe or band and location," and a tribal membership or enrollment number, if known. For mother and all maternal ancestors, DCFS wrote "does not apply" for the tribe or band and location, and "unknown" for the tribal membership or enrollment number. No other information was provided for any maternal relatives.[4] As relevant here, the notices were sent to the Pascua Yaqui Tribe and the BIA in Sacramento and Washington D.C.

In April 2023, the Pascua Yaqui Tribe responded to the notices by letter. The tribe indicated that mother and the

---

[4]    Optional questions such as whether any of the child's family members attended an Indian school or lived on "federal trust land, a reservation or rancheria, or an allotment," were left blank.

6

children are not members of the tribe and did not have applications for membership pending. The letter further explained: "Based upon the family information provided and the current enrollment records, the children are not eligible for membership and the Tribe will not intervene in this matter."

In June 2023, mother gave birth to her third child with Robert W. DCFS filed a petition concerning the new baby, R.W. According to the detention report, a social worker again asked mother about Indian ancestry. Mother again said she believed her family belongs to the Yaqui Tribe but denied that she was registered with the tribe. Mother filed another parental notification of Indian status form identifying her possible membership in the Yaqui Tribe and providing maternal great-grandmother's name and telephone number. DCFS sent a new ICWA-030 form to the Pascua Yaqui Tribe and BIA offices regarding R.W. The form contained the same information as the prior set of notices. In August 2023, the tribe responded by letter, notifying the court that R.W. is not a member of the tribe or eligible for membership based on the family information provided and current enrollment records.

In January 2024, the juvenile court conducted an adjudication hearing on the petitions then pending. The court sustained the amended petitions, but stated it understood there were "outstanding ICWA issues." The children's counsel asked the court to continue the disposition hearing because of ICWA. She had been in communication with the county's counsel "regarding what I found and notice not being proper" and asked that the matter be continued "until we can work out the ICWA status." County counsel agreed: "I think the ICWA issue addresses both [*sic*] children, so it does need to be updated." She

7

further explained that there was "a lot of information that was missing that I think we didn't have in the beginning." Neither the court nor counsel explained on the record what they viewed as the deficiencies in the prior ICWA notices.

There is no record of DCFS's further efforts to gather information about mother's Indian heritage. However, in February 2024, DCFS sent new ICWA notices to the Pascua Yaqui Tribe. In addition to the information included on the prior notices regarding the maternal relatives, the new notices indicated that mother, maternal grandmother, and the maternal great-grandmother claimed Yaqui heritage. The notices included mother's birthplace. Maternal grandmother was identified with an additional, alternative last name. Her date of birth was listed with a note, presumably related to her birthplace, that "[maternal grandmother] refused to provide the info." The notice additionally indicated that the maternal great-grandmother was reported to have lived on an "unknown reservation."

At the continued March 2024 disposition hearing, DCFS asked for a further continuance because ICWA notice was not proper and more information was needed, at least as to Robert W.'s potential membership in a tribe. Neither counsel nor the court described in detail the status of any ICWA investigation or notice. The court continued the disposition hearing to April.

In March 2024, the Pascua Yaqui Tribe responded to the second set of ICWA notices. A letter from the tribe's Attorney General notified the court: "The Pascua Yaqui Tribe's Enrollment Department has completed a preliminary enrollment check for this family." The tribe indicated the children are not members of the tribe and are not eligible for enrollment. The tribe further

informed the court it would not intervene in the children's matters.

At the continued April 2024 hearing, DCFS reported it had not received responses to ICWA notices sent to two tribes related to Robert W.'s Indian ancestry. The juvenile court again continued the disposition hearing.[5]

At the continued June 2024 disposition hearing, the juvenile court found it did not have a reason to know the children are Indian children. The court ordered the parents to keep DCFS, their attorneys, and the court aware of any new information relating to possible ICWA status. The court removed the children from both parents and ordered reunification services.

## DISCUSSION

### I. ICWA Inquiry and Notice

"Section 224.2 codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child."[6] (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1131, fn. omitted (*Dezi C.*).) An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).)

Section 224.2, subdivision (a), provides that both the juvenile court and child welfare agency have an "affirmative and

---

[5]     The matter was continued only as to the three youngest children. The juvenile court proceeded to disposition as to H.J. The court removed H.J. from mother, released him to his father, and set a hearing pursuant to section 364.

[6]     Section 224 et seq., is the California Indian Child Welfare Act.

9

continuing duty" to inquire whether a child is or may be an Indian child, beginning with the "initial contact." Under section 224.2, subdivision (b), if a child is placed in the agency's temporary custody, the agency must inquire whether the child is or may be an Indian child, by asking a nonexclusive group that includes the child, the parents, and extended family members.

Under section 224.2, subdivision (e), if the juvenile court or social worker has reason to believe an Indian child is involved in the proceeding, but does not have enough information to determine there is a reason to know the child is an Indian child, the court or the social worker must make further inquiry, as soon as practicable. "[R]eason to believe" means the court or social worker has information "suggesting that either the parent of the child or the child is a member . . . or may be eligible for membership . . . in an Indian tribe." (*Id*., subd. (e)(1).)

"Further inquiry" includes actions such as "[i]nterviewing the parents, Indian custodian, and extended family members" to gather information that would be necessary to provide notice to any relevant tribes. (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5).) That information includes "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment, membership, or citizenship information of other direct lineal ancestors of the child, and any other identifying information, if known." (§ 224.3, subd. (a)(5)(C).)

Further inquiry also includes contacting the BIA and State Department of Social Services for assistance in identifying contact information of relevant tribes, and contacting the "tribe

10

or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility."  (§ 224.2, subd. (e)(2)(B)–(C).)

There is "reason to know" a child is an Indian child when: a person having an interest in the child informs the court the child is an Indian child; the residence of the child, the child's parents, or the child's Indian custodian, is on a reservation or in an Alaskan Native village; a participant in the proceeding, officer of the court, Indian tribe or organization, or agency informs the court it has discovered information indicating the child is an Indian child; the child gives the court reason to know that the child is an Indian child; the court is informed that the child is or has been a ward of a tribal court; or the court is informed either the parent or the child possesses an identification card indicating membership or citizenship in an Indian tribe.  (§ 224.2, subd. (d).) Formal notice to a tribe or tribes is required only when there is a reason to know the child is an Indian child.  (§§ 224.2, subd. (f); 224.3, subd. (a).)  An Indian tribe's determination that a child is or is not a member, or eligible for membership in the tribe, is conclusive.  (§ 224.2, subd. (h).)

Under section 224.2, subdivision (i)(2), if "the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] . . . does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."

## II.    Standard of Review

In *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005 (*Ezequiel G.*), disapproved on another ground by *Dezi C.*, a panel

11

of this court concluded that a juvenile court's finding that there is no reason to know a child is an Indian child is reviewed for substantial evidence. The court concluded, however, that the determination of whether the child welfare agency has engaged in a "proper and adequate further inquiry and due diligence as required" under section 224.2 is reviewed for an abuse of discretion. (§ 224.2, subd. (i)(2).)

In *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101 (*Kenneth D.*), the California Supreme Court declined to determine the proper standard for reviewing a trial court's finding under section 224.2, subdivision (i). However, the court adopted relevant reasoning from *In re K.H.* (2022) 84 Cal.App.5th 566, 589: " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes. When . . . the court's implied finding that the agency's inquiry was proper, adequate, and duly diligent rests on a cursory record and a patently insufficient inquiry that is conceded, the only viable conclusion is that the finding is unsupported by substantial evidence and the court's conclusion to the contrary constitutes a clear abuse of discretion.' " (*Kenneth D.*, at pp. 1101–1102.)

Similarly, while not addressing the proper standard of review, the *Dezi C.* court noted "that the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [quoting *Ezequiel G.*] subject to a deferential standard of review." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

12

### III. The Record Fails to Support the Juvenile Court Finding that DCFS's Inquiry was Proper, Adequate, and Duly Diligent

On appeal, mother contends DCFS failed to comply with its obligation to conduct further inquiry under section 224.2, subdivision (e), and the juvenile court erred in finding DCFS's inquiry was adequate. We agree.

It is undisputed that after DCFS's initial inquiry, there was reason to believe the children are Indian children. Further inquiry was therefore necessary to help the court and DCFS determine whether there is reason to know the children are Indian children. Under section 224.2, subdivision (e)(2), that further inquiry was to include, but was not limited to, interviewing extended family members, contacting the BIA, and contacting the relevant tribe. As relevant here, an extended family member is a legal adult who is the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c)(1).)

Although providing formal notice to the tribe was not necessary at this stage, DCFS used judicial council form ICWA-030, Notice of Child Custody Proceedings for Indian Child, to contact the Pascua Yaqui Tribe. While this was a permissible means of completing one required step of the further inquiry process (§ 224.2, subd. (e)(2)(C)), the first version of the form sent to the tribe in April 2023 was largely incomplete. It was missing information DCFS was required to gather under section 224.2, subdivision (e)(2)(A) and section 224.3, subdivision (a)(5), including mother's birthplace, the maternal grandparents' birth dates, all information about the maternal great-grandmother

13

besides her name and date of birth, and all information about the maternal great-grandfather. The record does not indicate that DCFS attempted to obtain the missing information from mother or any extended family member prior to sending the form to the tribe.

Although DCFS sent a second set of ICWA-030 notices to the tribe, they provided little additional information. Still missing was the maternal great-grandmother's current or former address; her maiden, married, or former names; and any information about the maternal great-grandfather.

We may infer that DCFS spoke with someone in mother's family to obtain the additional information included on the second set of ICWA notices, but the record is silent on who that might have been. DCFS did not provide the court with a written or oral report explaining what steps it took to obtain additional information about the maternal great-grandparents, as required under sections 224.2 and 224.3. DCFS did not inform the court whether it attempted to contact the maternal great-grandmother more than once. The record further indicates social workers were aware of several extended family members, including some who lived in Arizona, where the Yaqui Tribe is located. DCFS had contact with some of these relatives. Yet, there is no evidence that DCFS attempted to ask these relatives about the family's claimed Yaqui heritage.

While the juvenile court had significant discretion to determine the adequacy of DCFS's further inquiry, the record before us fails to provide evidence of anything the agency did to further inquire, except sending incomplete notice documents to the Yaqui Tribe. On appeal, DCFS concedes that the record "does not reflect that DCFS conducted ICWA inquiries with respect to

14

maternal great-grandmother and other maternal relatives." However, the agency contends the further inquiry was nonetheless sufficient because the Yaqui Tribe concluded the children are not members of the tribe "based on the names and dates of birth of the children's direct maternal lineal ancestors including maternal great-grandmother."

We disagree. Although DCFS provided the tribe with the names and dates of birth of mother, maternal grandmother, maternal grandfather, and the maternal great-grandmother, it provided no information about the maternal great-grandfather. The record does not indicate whether DCFS asked mother, maternal grandmother, or the maternal great-grandmother whether the maternal great-grandfather had any Indian ancestry or was also believed to have Yaqui heritage. This information would be potentially important in a calculation of the blood quantum of the children. But even assuming the maternal great-grandmother was the only relative who was believed to be a member of the tribe, the overall incompleteness of the ICWA-030 form potentially undermined the tribe's determination, which was based at least in part on "the family information provided."

*In re Breanna S.* (2017) 8 Cal.App.5th 636 (*Breanna S.*), disapproved of on other grounds in *In re Caden C.* (2021) 11 Cal.5th 614, 637, footnote 6, is instructive. In that case, the issue on appeal was the adequacy of notice to the Pascua Yaqui Tribe. Under the version of the statute in effect at the time, the mother and maternal grandmother's statements that the family possibly had Indian ancestry in the Yaqui Tribe through the maternal great-grandmother was sufficient to trigger a duty to provide notice to the tribe. (*Breanna S.*, at pp. 644, 649–650.) DCFS sent ICWA notices that were missing required information, including

15

the maternal grandparents' current and former addresses, the maternal grandmother's place of birth, and the maternal great-grandparents' places of birth and death. (*Id*. at p. 651.) DCFS conceded some of the information was known to the agency but argued its omission was harmless. The agency additionally argued the record did not indicate that other omitted information was known or ascertainable. (*Ibid*.)

The court rejected the latter contention, relying on the agency's " ' "affirmative and continuing duty" ' " to make the inquiries necessary to determine whether a dependent child is or may be an Indian child." (*Breanna S.*, *supra*, 8 Cal.App.5th at p. 652.) DCFS had interviewed the mother and maternal grandmother about the family's Indian ancestry, but the record did not demonstrate that the agency asked either of them about the maternal grandfather, made any effort to locate and interview the maternal grandfather, or attempted to learn the birthplace of the maternal great-grandfather. (*Ibid*.) The court found this investigation inadequate. (*Id*. at pp. 652, 655.)

The court also rejected the argument that the omissions were harmless. The court noted the tribe's assessment that the children were not members of or eligible for membership in the tribe was based on the family information provided. The court reasoned that some of the information missing from the ICWA notices concerned the maternal great-grandmother, "the ancestor who [the mother and maternal grandmother] had affirmatively identified as a Yaqui Indian." (*Breanna S.*, *supra*, 8 Cal.App.5th at p. 654.) As a result, the court could not "say with any degree of confidence that additional information concerning that relative, her husband and her daughter would not have altered the tribe's evaluation." (*Ibid*.)

In this case, we are concerned with the adequacy of DCFS's further inquiry, not mandatory notice to the tribe. However, the *Breanna S.* court's reasoning remains relevant. DCFS contends no further inquiry of mother's family members was necessary because it contacted the tribe and the tribe found the children were not members or eligible for membership. But as the *Breanna S.* court explained, the tribe's determination was based on the family information DCFS provided. If that information was significantly incomplete, the trial court could not conclude DCFS's inquiry of the tribe was, standing alone, sufficient to show adequate and diligent inquiry under section 224.2.

Section 224.2, subdivision (e)(2) requires that in conducting a further inquiry, the child welfare agency gather the very information DCFS failed to collect here. DCFS presented no evidence demonstrating it made any efforts to interview available family members who might have been able to provide that missing information. Under these circumstances, we can only conclude that the court's implied finding that DCFS's inquiry was " 'proper, adequate, and duly diligent . . . is unsupported by substantial evidence and the court's conclusion to the contrary constitutes a clear abuse of discretion.' [Citations.]" (*Kenneth D.*, *supra*, 16 Cal.5th at p. 1102.)

However, the children remain under the juvenile court's jurisdiction and the matter is continuing. "So long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry, both the Agency and the juvenile court have an adequate opportunity to fulfill those statutory duties." (*In re S.H.* (2022) 82 Cal.App.5th 166, 179.) We therefore do not conditionally reverse the juvenile court's June 17, 2024 disposition orders. We instead vacate only the juvenile court's

17

June 17, 2024 finding that ICWA did not apply with respect to K.W., D.W., and R.W., and direct the juvenile court to conduct further proceedings consistent with section 224.2 and the court and DCFS's continuing ICWA inquiry duty.

## DISPOSITION

The appeal as to H.J. (B337665) is dismissed. In the appeal as to K.W., D.W., and R.W. (B338805), the juvenile court's June 17, 2024 ICWA finding is vacated and the matter is remanded for further proceedings consistent with this opinion. In all other respects, the juvenile court orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

18